IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| CROSSFIT, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>KATERIC PETER QUINNIE, an individual d/b/a KrossFit 24; DONALD JETT, an individual; TOTAL BODY RECALL, LLC, a limited liability company,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Civil Action No.**<br> _____<br><br><br><br><br> **Jury Trial Requested** |

## COMPLAINT

Plaintiff CrossFit, Inc. ("CrossFit, Inc."), for its Complaint against Kateric Peter Quinnie, Donald Jett, and Total Body Recall, LLC (collectively "Defendants") alleges upon personal knowledge as to its own acts and as to events taking place in its presence, and upon information and belief as to all other facts as follows:

### Nature of the Action

1. This is an action for willful violations of CrossFit, Inc.'s intellectual property rights, including trademark infringement, trademark dilution, false

1

designation of origin, and unfair competition arising out of Defendants' unauthorized use of CrossFit, Inc.'s registered service marks and trademarks and/or terms confusingly similar to CrossFit, Inc.'s registered service marks and trademarks.

## Jurisdiction and Venue

2. This action arises under the trademark laws of the United States, 15 U.S.C.§ 1051 et seq., and under Georgia state law governing trademarks and unfair competition.

3. This Court has subject matter jurisdiction over CrossFit, Inc.'s claims as federal questions pursuant to 28 U.S.C. § 1331 and 28 U.S.C. 1338 (a) and (b), and supplemental jurisdiction pursuant to 28 U.S. C. § 1367. The Court has pendent jurisdiction over the Georgia state law claims under 28 U.S.C. § 1338(b).

4. This Court has personal jurisdiction over Defendants in this district because Defendants are domiciled within this district and Defendants transact substantial and continuing business within this district.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400.

## The Parties

6. Plaintiff CrossFit, Inc. is a Delaware Corporation principally engaged in the business of fitness training and consultancy. CrossFit, Inc. is the owner of

protectable interests in several registered United States trademarks and service marks comprised of the term, "CROSSFIT."

7. Defendant Kateric Quinnie is an individual offering fitness-training services in Marietta, Georgia at a facility doing business as KrossFit 24 (the "Facility"). On information and belief, Defendant Kateric Quinnie is a Georgia resident residing in the Marietta area and owns, controls, and/or operates the Facility.

8. Defendant Donald Jett is an individual offering fitness-training services in Marietta, Georgia at the Facility. On information and belief, Defendant Donald Jett is a Georgia resident residing in the Marietta area and owns, controls, and/or operates the Facility.

9. On information and belief, Defendant Total Body Recall, LLC, is a Georgia limited liability company, whose principle place of business is located in Marietta, Georgia. On information and belief, Defendant Total Body Recall, LLC owns, controls, and/or operates the Facility.

10. Total Body Recall, LLC is the alter ego of Donald Jett because there is a unity of ownership and interest between Donald Jett and Total Body Recall, LLC such that no separation between the two defendants actually exists. On information and belief, Donald Jett is the owner of Total Body Recall, LLC, treats

3

the assets of Total Body Recall, LLC as his own, and has authorized and/or ratified all of the acts of Total Body Recall, LLC alleged herein for his own personal benefit. Because Donald Jett has utilized Total Body Recall, LLC's assets for personal gain and has diverted funds generated by Total Body Recall, LLC's assets to his own personal use, treating Donald Jett as a separate entity would be unjust.

## CrossFit, Inc.'s Intellectual Property Rights

11.   Through its design, development, sales, and marketing activities, CrossFit, Inc. has developed a revolutionary fitness training regimen that has become the principal strength and conditioning program for many police academies and tactical operations teams, military special operations units, champion martial artists, and hundreds of professional and amateur athletes worldwide. CrossFit, Inc. licenses use of its intellectual property, including the CROSSFIT® mark, to affiliates that have received particularized training and certification from CrossFit, Inc.. The CROSSFIT® brand is of particular value in the competitive "small-box" fitness training industry. CrossFit, Inc.'s careful cultivation, maintenance, and protection of its intellectual property rights has enabled CrossFit, Inc. to amass considerable goodwill within its industry, and the CROSSFIT® marks are widely recognized around the world. Consumers readily and singularly associate the CROSSFIT® brand with CrossFit, Inc.'s businesses

and services.

12. CrossFit, Inc. diligently protects its intellectual property through, inter alia, trademark and service mark registration. CrossFit, Inc. owns several registered United States trademarks and service marks comprised of the word mark "CROSSFIT," including registered U.S. Service Mark Registration No. 3,007, 458 issued on October 18, 2005, for use in connection with fitness training and services. CrossFit, Inc.'s marks have been in continuous use in commerce since at least the dates of first use identified in their registrations to the present day.

13. CrossFit, Inc.'s federal trademark registrations were duly and legally issued, are valid and subsisting, and constitute prima facie evidence of CrossFit, Inc.'s exclusive ownership of the CROSSFIT® marks.

14. CrossFit, Inc. provides a nationally standardized certificate program to personal trainers who desire to become licensed CROSSFIT® affiliates. Persons who successfully complete CrossFit, Inc.'s certificate program and meet other requirements for affiliation are eligible to enter into annually renewable affiliate license agreements, which permit limited use of the CROSSFIT® mark subject to various conditions. Only persons who have completed CrossFit, Inc.'s certificate process and entered into valid affiliate license agreements are permitted to use CrossFit, Inc.'s CROSSFIT® mark.

**Defendant's Willful Infringement**

15.   On information and belief, on or around April 2015, Defendants began offering fitness-training services under the term "KrossFit" ("Infringing Term").

16.   Defendants advertise their fitness training services using the Infringing Term through the same marketing channels that CrossFit, Inc. utilizes, including various Internet media. Signage outside of the Facility also advertises their fitness services using the Infringing Term. Defendants' use of the Infringing Term creates the false impression that Defendants are valid, licensed CROSSFIT® affiliates and/or certified CROSSFIT®-branded trainers, creating consumer confusion.  The consumer confusion caused by Defendants' use of the Infringing Term is exacerbated by Defendants' extensive use of advertising on the Internet, including without limitation through Groupon.com, which allow Defendants to continuously communicate with consumers in real time to directly reinforce the misperception that Defendants are CROSSFIT®-branded affiliates and/or certified CROSSFIT®-branded trainers.

17.   On or around April 23, 2015, CrossFit, Inc. first sent an e-mail to Defendants, demanding Defendants to cease and desist its use of the CROSSFIT® marks and the confusingly similar term "KrossFit."   Defendants responded on

April 25, 2015, and stated that they would correct the issue.

18. On or around May 1, 2015, CrossFit, Inc. sent another letter to Defendants inquiring the status of the removal of the infringement of the CROSSFIT® marks. When Defendants did not respond, CrossFit sent additional letters on May 19, 2015 as well as May 29, 2015.

19. On or around June 8, 2015 and June 18, 2015, CrossFit, Inc. sent two additional letters to Defendants demanding that they cease and desist all use of the CROSSFIT® marks and the confusingly similar variation of "KrossFit." Defendants responded that they had already removed all infringement.

20. On or around June 22, 2015, CrossFit, Inc. attempted to speak with Defendants via telephone; however, Defendants were uncooperative and would not provide CrossFit, Inc. with the name of whom they were speaking with, or the name of any business partners. At this time, CrossFit, Inc. also notified Defendants that due to the past use of "KrossFit" and the CROSSFIT® marks, the proposed "KFit" would be an unsuitable business name change, since it would still be confusingly similar.

21. On or around June 25, 2015, CrossFit, Inc. spoke with Defendant Donald Jett who identified someone named "Kateric" with a last name "Quincey" or something similar-sounding as the main person who had been using the

Infringing Term. He alleged at this point all infringement was removed and we would let Kateric know that "KFit" was unacceptable.

22.     On or around June 30, 2015, CrossFit, Inc. asked Defendant Quinnie to reveal his full name and business partners name by July 2, 2015. CrossFit, Inc. also asked Defendant Jett to reveal Defendant Quinnie's full name. Neither Defendant responded, though CrossFit, Inc. discerned Defendant Quinnie's full name based on research into Defendant Quinnie's email address.

23.     On or around July 21, 2015, CrossFit, Inc. contacted Defendant Quinnie to inquire about his new business name choice. Defendant Quinnie refused to answer, insisted that he had fully complied, and hung up on CrossFit, Inc.

24.     On or around November 10, 2015, CrossFit, Inc. was informed there was still a sign advertising using the confusingly similar "KrossFit" term at the Facility. When CrossFit, Inc. called the number on the sign, CrossFit, Inc. was informed that Defendants still conducted business as "KrossFit 24," though at a new location.

25.     CrossFit, Inc. has never authorized or licensed Defendants to use the CROSSFIT® marks and/or the Infringing Term on or in connection with Defendants' services and/or products being offered under the Infringing Term.

26. Neither Defendant Quinnie nor Defendant Jett are certified CROSSFIT®-branded trainers qualified to coach or lead others in CROSSFIT®-branded workouts.

## COUNT I

### Trademark Infringement (15 U.S.C. § 1114)

27. CrossFit, Inc. repeats and realleges the allegations contained in the paragraphs above as if full set forth herein.

28. This claim is for trademark infringement under the laws of the United States, Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

29. Defendants have used the Infringing Term to advertise and sell Defendants' fitness training services and goods in violation of CrossFit, Inc.'s rights in its registered trademarks and service marks.

30. Defendants' use of the Infringing Term is likely to cause confusion, mistake, and to deceive consumers.

31. Defendants' actions constitute a blatant attempt to confuse the consuming public and to trade off CrossFit, Inc.'s goodwill.

32. Defendants have acted knowingly and willfully, with full knowledge of the likelihood of confusion and with the intent to deceive consumers in order to trade off the efforts and earned goodwill and reputation of CrossFit, Inc.

33. By reason of the foregoing acts of trademark infringement, CrossFit, Inc. has been injured in an amount not yet ascertained. Further, Defendants have been unjustly enriched by virtue of their deception of consumers and misappropriation of CrossFit, Inc.'s goodwill.

34. In addition, as a result of Defendants' acts of infringement, CrossFit, Inc. has suffered and will continue to suffer irreparable harm for which CrossFit, Inc. has no adequate remedy at law, including damage to CrossFit, Inc.'s goodwill. Unless this Court enjoins Defendants' acts of infringement, CrossFit, Inc. will continue to suffer an irreparable harm.

35. Defendants' actions have been knowing, intentional, wanton, and willful. The principles of equity warrant an award to CrossFit, Inc. of treble damages and profits, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

## COUNT II

### False Designation of Origin (15 U.S.C. § 1125(a))

36. CrossFit, Inc. repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

37. Defendants' use of the Infringing Term in interstate commerce, without CrossFit, Inc.'s consent, is a false designation of origin causing a

likelihood of confusion, mistake, and deception as to source, sponsorship, affiliation, and/or connection in the minds of the public. Defendants' conduct has infringed CrossFit, Inc.'s trademark rights in violation of Section 43 (a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

38. By reason of the foregoing, CrossFit, Inc. has been injured in an amount not yet fully determined. Further, Defendants have been unjustly enriched by virtue of their deception of consumers and misappropriation of CrossFit, Inc.'s goodwill.

39. In addition, as a result of Defendants' acts of infringement, CrossFit, Inc. has suffered and will continue to suffer irreparable harm for which CrossFit, Inc. has no adequate remedy at law, including damage to CrossFit, Inc.'s goodwill. Unless this Court enjoins Defendants' acts of infringement, CrossFit, Inc. will continue to suffer irreparable harm.

40. Defendants' actions have been knowing, intentional, wanton, and willful. The principles of equity warrant an award to CrossFit, Inc. of treble damages and profits, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

## COUNT III

### Trademark Dilution (15 U.S.C. § 1125(c))

41.     CrossFit, Inc. repeats and alleges the allegations contained in the paragraphs above as if fully set forth herein.

42.     This claim is for trademark dilution under the laws of the United States, Section 43 of The Lanham Act, 15 U.S.C. § 1125(c).

43.     Because of the substantive investment CrossFit, Inc. has made in marketing its business, throughout years of continuous use in commerce, including advertising and extensive marketing, CrossFit, Inc.'s service marks and trademarks have become instantly recognizable and distinctive in the fitness industry, have gained secondary meaning, and have become both distinctive and famous. Thus, CrossFit, Inc.'s marks qualify as "famous marks" under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c).

44.     Defendants' unauthorized use of the CROSSFIT® marks and/or confusingly similar terms dilutes the capacity of CrossFit, Inc.'s marks to identify and distinguish CrossFit, Inc.'s services.

45.     By reason of the foregoing acts of trademark dilution, CrossFit, Inc. has been injured in an amount not yet ascertained. Further, Defendants have been unjustly enriched by virtue of their dilution of CrossFit, Inc.'s marks.

46. In addition, as a result of Defendants' acts of infringement, CrossFit, Inc. has suffered and will continue to suffer irreparable harm for which CrossFit, Inc. has no adequate remedy at law, including damage to CrossFit, Inc.'s goodwill. Unless this Court enjoins Defendants' acts of infringement, CrossFit, Inc. will continue to suffer irreparable harm.

47. Defendants' actions have been knowing, intentional, wanton, and willful. The principles of equity warrant an award to CrossFit, Inc. of treble damages and profits, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

## COUNT IV

**Georgia Statutory Trademark Dilution Under O.C.G.A. § 10-1-451(b)**

48. CrossFit, Inc. repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

49. The CROSSFIT® marks are distinctive.

50. Defendants' unauthorized use of the CROSSFIT® marks and/or confusingly similar terms in connection with its business and the goods and services offered by Defendants' has caused and is likely to continue to cause dilution by blurring of the distinctive quality of CrossFit, Inc.'s famous CROSSFIT® marks.

51.    Defendants' acts are likely to tarnish, injure, or trade upon CrossFit, Inc.'s business, reputation or goodwill, and to deprive CrossFit, Inc. of the ability to control the use of its CROSSFIT® mark, and quality of products associated therewith.

52.    On information and belief, Defendants' actions have been knowing, intentional, willful, and deliberate.

53.    Defendants, by their actions, have irreparably injured CrossFit, Inc. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violations of CrossFit, Inc.'s rights, for which CrossFit, Inc. has no adequate remedy at law.

## COUNT V

### Violation of GUDTPA Under O.G.C.A. §§10-1-370 to 10-1-375

54.    CrossFit, Inc. repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

55.    Defendants pass off their services as those of CrossFit, Inc.'s.

56.    Defendants cause likelihood of confusion or of misunderstanding about the source, sponsorship, approval, or certification of services, and/or affiliation, connection or association with or certification by CrossFit, Inc.

57.    Defendants, by their actions, have irreparably injured CrossFit, Inc.

Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of CrossFit, Inc.'s rights, for which CrossFit, Inc. has no adequate remedy at law.

58.  Defendants willfully engaged in their trade practice knowing it to be deceptive, thereby entitling CrossFit, Inc. to recover attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, CrossFit, Inc. demands judgment as follows:

a)  Judgment in CrossFit, Inc.'s favor on all claims herein;

b)  Preliminary and permanent injunctions preventing Defendants and those additional parties specified in Federal Rule of Civil Procedure 65 (d) from continued infringement of CrossFit, Inc.'s intellectual property rights, including infringement of CrossFit, Inc.'s registered trademarks and service marks;

c)  An accounting of profits and damages resulting from Defendants' false designation of origin and trademark infringement, and trebling of such damages under the trademark laws because of the knowing, intentional, willful, and wanton nature of Defendants' conduct;

d)  An award to CrossFit, Inc. of (a) an amount equal to the actual damages suffered by CrossFit, Inc. as a result of the infringement; (b)

an amount equal to the profits earned by Defendants as a result of its infringement; (c) an amount equal to three times the monetary award assessed in view of Defendants' willful and wanton infringement; (d) pre-judgment interest; (e) an amount equal to CrossFit, Inc.'s reasonable attorneys' fees, as an "exceptional" case under 15 U.S.C. § 1117;

e) An award of punitive damages for intentional and willful acts;

f) An award of interest, attorneys' fees, and costs; and

g) Such other and further relief as the court deems proper.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38, Federal Rules of Civil Procedure, CrossFit, Inc. hereby demands its right to a jury trial on all issues triable to a jury.

Respectfully submitted this 20th day of November, 2015.

**GORDON & REES LLP**

By: /s/ Cecily J. McLeod
Cecily J. McLeod
Georgia Bar No. 581858
Yuo-Fong C. Amato (*pro hac vice* pending)
Susan B. Meyer (*pro hac vice* pending)

        3455 Peachtree Rd., Suite 1500
        Atlanta, GA 30326
        Telephone:  (404) 869-9054
        Fax:  (678) 389-8475
        Email:  cmcleod@gordonrees.com
        Email:  bamato@gordonrees.com
        Email:  smeyer@gordonrees.com

*Attorneys for Plaintiff Crossfit, Inc*