IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CROSSFIT, INC.,

                   **Plaintiff,**

      **v.**

KATERIC PETER QUINNIE,
DONALD JETT, and TOTAL
BODY RECALL, LLC,

                   **Defendants.**

                              **1:15-cv-04080-WSD**

## OPINION AND ORDER

This matter is before the Court on Plaintiff CrossFit, Inc.'s ("CrossFit")

Motion for Default Judgment [15].

**I.    BACKGROUND**

    A.    <u>Facts</u>

CrossFit is a Delaware corporation principally engaged in the business of

fitness training and consultancy.  (Compl. [1] ¶ 6).  CrossFit owns several

registered United States trademarks and service marks for the term "CROSSFIT."

(Id.; U.S. Trademark and Service Mark Registrations, Ex. AA [15.12]).

Defendant Kateric Peter Quinnie ("Quinnie") is a Georgia resident.  ([1]

¶ 7).  Defendant Donald Jett ("Jett") is a Georgia resident, and Defendant Total

Body Recall, LLC ("Total Body Recall") is a Georgia limited liability company owned and controlled by Jett.  (Id. ¶¶ 8-10).  CrossFit's Complaint alleges that Quinnie and Jett are business partners.  (Id. ¶¶ 20-22).

In April 2015, CrossFit discovered that Defendants began offering fitness-training services under the name "KrossFit 24."  (Id. ¶¶ 7, 15).  On April 23, 2015, CrossFit sent a letter to Quinnie, demanding Defendants to cease and desist their use of the CROSSFIT® marks and the term "KrossFit" on their Facebook page (www.facebook.com/krossfit24) (the "KrossFit24 Facebook page").  (Id. ¶ 17; [15.1] at 16; [15.10] at 4).  On April 25, 2015, Quinnie apologized for the error and responded that they would correct the issue.  ([1] ¶ 17; [15.10] at 4).

Beginning on May 1, 2015, CrossFit sent a series of letters to Quinnie.  ([1] ¶¶ 18-19).  On May 1, 2015, CrossFit requested the removal of the terms KrossFit and CrossFit from the KrossFit24 Facebook page and Total Body Recall's webpage (www.totalbodyrecall.org) (the "TBR webpage").  ([15.10] at 3).  In response to CrossFit's letter, Quinnie deleted the KrossFit24 Facebook page.[1] ([15.1] at 17; [15.10] at 3).  On May 19, 2015, and May 29, 2015, CrossFit sent

---

[1]      Defendants, however, created a new Facebook page under Kross Fitness 24 (www.facebook.com/Kross-Fitness24-662166407199834).  ([15.4] ¶ 5).

two letters to Quinnie demanding, again, the removal of the word "Krossfit" from the TBR webpage.  ([1] ¶ 18; [15.10] at 2-3).  Quinnie did not respond.  ([15.1] at 16).  On June 8, 2015, CrossFit sent another letter to Quinnie, demanding Jett to remove the term Krossfit from the TBR webpage.  On June 18, 2015, CrossFit's outside counsel, Gordon & Rees LLP ("Gordon & Rees"), sent a letter to both Quinnie and Jett, demanding Jett to comply with CrossFit's demands and to stop their use of "any confusingly similar terms (including without limitation, "Krossfit," "Kfit," "Xfit," "Crossfitness," etc.) . . . ."  ([1] ¶ 19; [15.16] ¶ 3; [15.17] at 2).  On June 21, 2015, Quinnie responded that he stopped using those terms.  ([15.17] at 2).

Beginning from June 22, 2015, to July 21, 2015, CrossFit and Defendants engaged in several discussions concerning Defendants' business partners and potential business name change.  (Id. ¶¶ 20-23).  During these discussions, Defendants were uncooperative and evasive regarding their business associates' identities.  (Id.).

On November 10, 2015, CrossFit discovered that Defendants failed to remove the "KrossFit24" signage located at their previous fitness center in Marietta, Georgia.  ([1] ¶ 24; [15.1] at 19).  When CrossFit called the number listed on the signage, it discovered that Defendants continued to conduct their business as

"KrossFit 24," though at a new location in Kennesaw, Georgia.  ([1] ¶ 24; [15.1] at 19).

To date, Defendants continue to advertise as "Kross Fit 24" on Groupon, and Defendants' now defunct business[2] is still listed on the WhitePages and YellowPages websites as well as on Instagram and on Facebook.  (See [15.1] at 20; Instagram Screenshots, Ex. A [15.15]; Facebook Page, Ex. B [15.15]; Groupon Offer, Ex. E [15.18]; Whitepages Listing, Ex. F [15.19]; Yellowpages Listing, Ex. G [15.20]).

B.    Procedural History

On November 20, 2015, CrossFit filed this action against Defendants, asserting the following federal and state trademark violations: (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) trademark dilution under 15 U.S.C. § 1125(c); (4) Georgia statutory trademark dilution under O.C.G.A. § 10-1-451(b); and (5) violation of Georgia's Uniform Deceptive Trade Practices Act under O. C.G.A. §§ 10-1-370 to 10-1-375.  (See Compl. [1]).

---

[2]    Defendants now operate under the name "Supreme K Fitness."  ([15.1] at 19).

On December 13, 2015, CrossFit served the Complaint on Jett and Total Body Recall.  ([5], [6]).  On January 7, 2016, CrossFit served the Complaint on Quinnie.  ([7]).  Defendants failed to respond, and no counsel appeared on their behalf.

On February 24, 2016, CrossFit filed a Request for Entry of Default [13] based on Defendants' failure to respond to the Complaint.  On February 26, 2016, the Clerk entered default against Defendants.

On May 13, 2016, CrossFit moved for default judgment.  ([15]).  CrossFit is seeking to recover the following relief: Defendants' profits, treble damages, permanent injunction, and attorneys' fees and costs.  (Id. at 43).

## II.    DISCUSSION

A.    Legal Standard

Rule 55(b) of the Federal Rules of Civil Procedure provides that default judgment may be entered against defaulting defendants as follows:

(1)    **By the Clerk**.  If the plaintiff's claim is for a sum certain or a sum that can be made certain  by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2)     **By the Court**.  In all other cases, the party must apply to the court for a default judgment. . . .  If the party against whom a default judgment is sought has appeared personally or by a

> representative, that party or its representative must be served
> with written notice of the application at least 7 days before the
> hearing.  The court may conduct hearings or make referrals . . .
> when, to enter or effectuate judgment, it needs to:
> (A)  conduct an accounting;
> (B)  determine the amount of damages;
> (C)  establish the truth of any allegation by evidence; or
> (D)  investigate any other matter.

Fed. R. Civ. P. 55(b).

"[T]here is a strong policy of determining cases on their merits . . . . [Courts] therefore view defaults with disfavor."  In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003).  "The entry of a default judgment is committed to the discretion of the district court."  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) (citing 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2685 (1983)).

When considering a motion for default judgment, a court must investigate the legal sufficiency of the allegations and ensure that the complaint states a plausible claim for relief.  Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005); Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988).  If "the plaintiff has alleged sufficient facts to state a plausible claim for relief," a motion for default judgment is warranted.  Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015).  "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim."

6

<u>Id.</u> at 1245.  "[W]hile a defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'"  <u>Cotton</u>, 402 F.3d at 1278 (quoting <u>Nishimatsu Constr. Co. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975)).

      B.   <u>Trademark Infringement</u>

Under the Lanham Act, a defendant is liable for trademark infringement if he, without consent, uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" that "is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1).  In order to prevail on a federal trademark infringement claim under § 1114, "the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive."  <u>Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.</u>, 496 F.3d 1231, 1241 (11th Cir. 2007); <u>see also</u> <u>Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC</u>, 605 F.3d 931, 934 (11th Cir. 2010).

CrossFit's Complaint alleges that CrossFit owns a registered U.S. service mark comprised of the word "CROSSFIT," as registered in U.S. Service Mark

Registration No. 3,007,458 issued on October 18, 2005, for use in fitness training and services.  ([1] ¶ 12).  The CROSSFIT® mark, CrossFit asserts, has been "in continuous use in commerce since at least the dates of first use identified in their registrations to the present day."  (Id.).  Once a mark has been registered for five years with the U.S. Patent and Trademark Office and "become 'incontestable,' its validity is presumed . . . . [I]ts validity cannot [then] be challenged on the grounds that it is merely descriptive."  Dieter v. B & H Indus., 880 F.2d 322, 328 (11th Cir. 1989); Frehling Enters. v. Int'l Select Grp., Inc., 192 F.3d 1330, 1336 (11th Cir. 1999) (citing Wilhelm Pudenz, GmbH v. Littlefuse, Inc., 177 F.3d 1204, 1208 (11th Cir. 1999)).  CrossFit only permits "persons who have completed CrossFit's certificate process and entered into valid affiliate license agreements" to use the CROSSFIT® mark.  ([1] ¶ 14).  Neither Jett nor Quinnie is ever authorized or licensed to use the CROSSFIT® mark.  (Id. ¶ 25).  Accordingly, the Court concludes that any purported use of the CROSSFIT® mark is without consent.

The question is then whether Defendants' unauthorized use of the CROSSFIT® mark or their use of KrossFit was likely to cause confusion, or to cause mistake or to deceive.  Seven factors apply in our Circuit to determine whether customer confusion is likely to occur under the Lanham Act.  The factors include (1) the type of mark; (2) the similarity of mark; (3) the similarity of the

8

products the marks represent; (4) the similarity of the parties' retail outlets and customers; (5) the similarity of advertising media; (6) the defendant's intent; and (7) any actual confusion.  Of the seven factors, the type of mark and the evidence of actual confusion are the most important.  Caliber, 605 F.3d at 935 (citing Frehling, 192 F.3d at 1335); Freedom Sav. & Loan Ass'n v. Way, 757 F.2d 1176, 1186 (11th Cir. 1985); Atlanta Allergy & Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta, LLC, 685 F.Supp.2d 1360, 1377 (N.D. Ga. 2010).  "[N]o single factor is dispositive, but greater weight is given to the type of mark and evidence of actual confusion."  Dieter, 880 F.2d at 326.

### 1.   Type of mark

"There are four recognized types of mark, ranging from weakest to strongest: generic, descriptive, suggestive and arbitrary.  The stronger the mark, the greater the scope of protection accorded it."  Caliber, 605 F.3d at 938 (quoting Aronowitz v. Health–Chem Corp., 513 F.3d 1229, 1240 (11th Cir. 2008)).  "An arbitrary or fanciful mark bears no logical relationship to the product or service it is used to represent, [e.g., Kodak].  A suggestive mark refers to some characteristic of the goods, but requires a leap of the imagination to get from the mark to the product, [e.g., Penguin Refrigerators].  A descriptive mark identifies a characteristic or quality of the service or product, [e.g., Vision Center]."  Id. at 939

9

(alteration in original) (quoting <u>Welding Servs. v. Forman</u>, 509 F.3d 1351, 1357-58

(11th Cir. 2007)).  A generic name "is the term by which the product or service

itself is commonly known" and "depicts the product or service as a whole, rather

than any particular feature, quality, or characteristic of the whole." <u>Welding</u>, 509

F.3d at 1358 (internal citations and quotation marks omitted).  Whether a name is

generic depends on the use of the term, not the term itself.  "A word may be

generic of some things and not of others: 'ivory' is generic of elephant tusks but

arbitrary as applied to soap." <u>Id.</u> at 1358 (quoting <u>Soweco, Inc. v. Shell Oil Co.</u>,

617 F.2d 1178, 1183 (5th Cir. 1980)).  The "generic use of a word may not be

registered as a trademark." <u>Id.</u> (citing <u>Park ´N Fly, Inc. v. Dollar Park & Fly, Inc.</u>,

469 U.S. 189, 194, 105 S. Ct. 658 (1985)).

     The Court finds that the CROSSFIT® mark is a suggestive mark.[3]  The mark

CROSSFIT® is a combination of the terms, "cross" and "fit," which are both

commonly associated with exercise and fitness.  The term "cross" has been used in

sports and fitness as in cross-training to refer to combining different sports or types

of exercises in order to improve a person's fitness and performance.  The

combination of the terms into a single unique word places the mark in the

---

[3]     The Court notes that under CrossFit's U.S. registration, the CROSSFIT®
mark consists of standard characters without claim to any particular font, style,
size, or color.  (U.S. Service Mark Registration No. 3,007,458 [15.12]).

"suggestive" category, requiring a leap of the imagination to get from the mark to the product.  See CrossFit, Inc. v. 2XR Fit Sys., LLC, No. CIV. 2:13-1108 KM, 2014 WL 972158, at *5 (D.N.J. 2014) (placing the CROSSFIT® mark in the suggestive category).  The CROSSFIT® mark is not an arbitrary term such as KODAK.

      2.    Similarity of mark

    Similarity of mark is determined by "the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed."  Caliber, 605 F.3d at 939 (quoting E. Remy Martin & Co. v. Shaw–Ross Int'l Imps., Inc., 756 F.2d 1525, 1531 (11th Cir. 1985)).  CrossFit argues, and the Court agrees, that its CROSSFIT® mark and Defendants' KrossFit mark have strong visual similarity, and the two marks sound identical.  ([15.1] at 30); see also CrossFit, Inc. v. 2XR Fit Sys., LLC, 2014 WL 972158, at *4 (finding "Cross Fitness" and "Xross Fitness" are extremely similar to "CrossFit.").[4]

---

[4]    Defendants' use of "Supreme K Fitness," however, does not connote the same overall impression as CrossFit asserts.  "K Fitness" and "K Fit" do not have the same visual appearance, sound, or meaning as "X Fitness" or "X Fit" does when compared to the CROSSFIT® mark.  The letter "X" is used often to abbreviate the word "cross," such as the abbreviation "XC" for cross-country in sports, the acronym "X-ing" for crossing in transportation, or the acronym "XREF"

3.   <u>Similarity of the products</u>

The question whether there is a similarity of products requires the "determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." <u>Caliber</u>, 605 F.3d at 939-40 (quoting <u>Frehling</u>, 192 F.3d at 1338).  In our Circuit, the test is "not whether the goods could be distinguished, as they could be by any [consumer], but whether the goods are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods." <u>Frehling</u>, 192 F.3d at 1338.

CrossFit argues that Defendants offer the same fitness-training services as CrossFit.  ([15.1] at 32).  The Court does not doubt that Defendants offer similar or the exact same fitness training.  Indeed, CrossFit freely posts exemplary workout

---

for cross-reference in engineering.  <u>See</u> <u>CrossFit, Inc. v. Maximum Human Performance, LLC</u>, No. 12CV2348-BTM-MDD, 2013 WL 1627953, at *2 (S.D. Cal. Apr. 12, 2013) ("'X' is commonly used and understood as a shorthand form of 'Cross' by the general public.").

CrossFit has not demonstrate that its CROSSFIT® mark has gained a secondary meaning that any abbreviation of the word CROSSFIT such as CFIT would give rise to a distinct meaning.  <u>See</u> <u>Welding</u>, 509 F.3d at 1359-60 (finding plaintiffs failed to demonstrate that the abbreviation has a distinct meaning in the mind of the public); <u>Dunfey Hotels Corp. v. Meridien Hotels Investments Grp., Inc.</u>, 504 F. Supp. 371, 382-83 (S.D.N.Y. 1980) (plaintiff established that the name "Parker House" is a well-known service mark for hotel services but failed to establish that the abbreviated name "Parker" triggered the same public recognition).

of the day ("WOD") online for others to follow.  These exercises are not unique in

any way but are combinations of known exercises movements.  The question then

is whether a reasonable consumer would get the sense that CrossFit is likely the

source of the fitness services provided by Defendants.  There are differences in the

service offered by CrossFit and Defendants, making it unclear in which party's

favor the similarity-of-products factor weighs.

    4.    <u>Similarity of the parties' retail outlets and customers</u>

The similarity of the parties' retail outlets and customers "takes into

consideration where, how, and to whom the parties' products are sold."  <u>Caliber</u>,

605 F.3d at 940 (quoting <u>Frehling</u>, 192 F.3d at 1339).  CrossFit does not provide

any evidence as to the parties' retail outlets and customers.  This factor, like the

previous one, cannot conclusively be found to weigh in favor of any of the parties.

    5.    <u>Similarity of advertising media</u>

The "similarity of advertising" factor "looks to each party's method of

advertising."  <u>Caliber</u>, 605 F.3d at 940.  CrossFit asserts that both parties "make

extensive use of the Internet and Social Media sites such as Facebook and

Instagram."  ([1] ¶ 16; [15.1] at 32).  Here, CrossFit has extensive broadcast

advertising such as featuring its CrossFit games on ESPN and having paid

commercial during Super Bowl.  Defendants, however, does not, and only have

one physical banner and a significantly smaller presence online.  The Court finds that there is a slight overlap in advertising, and this factor weighs slightly in favor of CrossFit.

    6.    Defendant's intent

The intent factor looks to whether the allegedly infringing party "adopted a plaintiff's mark with the intention of deriving a benefit from the [trademark holder's] business reputation."  Caliber, 605 F.3d at 940.  CrossFit asserts that Defendants exhibited bad faith and intended to misappropriate the goodwill of the CROSSFIT® mark.  ([15.1] at 33).  While it is clear that Defendants used the term KrossFit as their business name to derive a benefit from the CROSSFIT® mark,[5] the Court, however, finds the conduct to fall short of bad faith absent additional facts.  According, this factor again weighs only slightly in favor of CrossFit.

    7.    Actual confusion

Actual consumer confusion is "the best evidence" of likelihood of confusion.  Caliber, 605 F.3d at 936-37 (citations omitted).  The rule, courts usually apply, is that infringement occurs when "there is a likelihood of confusion in the mind[s] of

---

[5]    Defendants' intent for using "cross fit" to describe its classes and programs and the hashtag "#crossfit" is less clear.  It is equally possible that Defendants used the terms as a descriptive of a style of workout or that they sought to reap benefit from CrossFit's reputation and goodwill.

an appreciable number of 'reasonably prudent' buyers." <u>John H. Harland Co.</u>

<u>v. Clarke Checks, Inc.</u>, 711 F.2d 966, 979 n.22 (11th Cir. 1983) (citation omitted).

"Short-lived confusion or confusion of individuals casually acquainted with a

business is worthy of little weight, while confusion of actual customers of a

business is worthy of substantial weight." <u>Safeway Stores, Inc. v. Safeway</u>

<u>Discount Drugs, Inc.</u>, 675 F.2d 1160, 1167 (11th Cir. 1982) (citations omitted).

Because there is no evidence of actual confusion, this factor cannot be found to

weigh in favor of any of the parties.

8.    <u>Weighing of the seven factors of "likelihood of confusion"</u>

The Court, having considered each of the seven factors, now considers the

overall balance of them.  <u>Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.</u>,

508 F.3d 641, 649 (11th Cir. 2007).  The Court finds that the factors tip in favor of

CrossFit on whether Defendants' use of the KrossFit mark created the likelihood of

confusion.  The Court is satisfied that CrossFit has alleged sufficient facts, and

default judgment of trademark infringement is warranted.

C.    <u>False Designation of Origin</u>

"[A] false designation of origin claim . . . proscribes the behavior of 'passing

off' or 'palming off,' which occurs when a producer misrepresents his own goods

or services as someone else's." <u>Custom</u>, 508 F.3d at 647 (internal quotation

15

omitted).  "To establish a prima facie case under § 1125(a), a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two."  Id.

CrossFit registered its CROSSFIT® mark under the Lanham Act and has enforceable rights in the service mark.  See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 835 (11th Cir. 1983) (enjoining the use of "Lollipops" as a trade name because it infringes on the "Jellibeans" service mark); Citibank, N.A. v. Citibanc Grp., Inc., 724 F.2d 1540 (11th Cir. 1984) (enjoining the use of "Citibanc" as a trade name and mark because they infringe on Citibank's trade name and mark).  The first prong of the 15 U.S.C. § 1125(a) analysis is satisfied.

For the second prong, courts apply the same test of likelihood of confusion in determining violations of 15 U.S.C. § 1125(a)(1) as in determining whether there has been trademark infringement in contravention of 15 U.S.C. § 1114.  See Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502 (11th Cir. 1985); Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010); Custom, 508 F.3d at 648. Because the Court finds that there is a slight "likelihood of confusion" under 15 U.S.C. § 1125(a), default judgment is also appropriate for CrossFit's claim of false designation of origin.

16

D.   <u>Trademark Dilution</u>

"To prevail on a federal dilution claim, the plaintiff must demonstrate that:

(1) the plaintiff's mark is famous; (2) the defendant used the plaintiff's mark after

the plaintiff's mark became famous; (3) the defendant's use was commercial and in

commerce; and (4) the defendant's use of the plaintiff's mark has likely caused

dilution."[6] <u>Bentley Motors Corp. v. McEntegart</u>, 976 F. Supp. 2d 1297, 1312-13

(M.D. Fla. 2013).  A plaintiff does not need to show actual or likely confusion,

competition, or actual economic injury for this claim.  <u>Bell v. Foster</u>,

No. 1:13-CV-405-TWT, 2013 WL 6229174, at *6 (N.D. Ga. 2013).

"[A] mark is famous if it is widely recognized by the general consuming

public of the United States as a designation of source of the goods or services of

the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  The Court may look to several

factors, including: (1) the "duration, extent, and geographic reach of advertising

---

[6]      15 U.S.C. § 1125(c)(1) provides, in pertinent part:
    [T]he owner of a famous mark that is distinctive, inherently or
    through acquired distinctiveness, shall be entitled to an injunction
    against another person who, at any time after the owner's mark has
    become famous, commences use of a mark or trade name in
    commerce that is likely to cause dilution by blurring or dilution by
    tarnishment of the famous mark, regardless of the presence or absence
    of actual or likely confusion, of competition, or of actual economic
    injury.
15 U.S.C. § 1125(c)(1).

and publicity of the mark"; (2) the "amount, volume, and geographic extent of sales of goods or services offered under the mark"; (3) the "extent of actual recognition of the mark"; and (4) whether "the mark was registered." 15 U.S.C. § 1125(c)(2)(A)(i)-(iv). The CROSSFIT® mark was registered in 2005. CrossFit has advertised the mark extensively, including a commercial during the Super Bowl. CrossFit also has a strong social media presence and online presence. The overall impression is that CrossFit has a strong trademark. For the purpose of this Order, the Court will assume that the CROSSFIT® mark is famous at least as a brand name for gym/fitness goods and services. See CrossFit, Inc. v. Maximum Human Performance, LLC, 2013 WL 1627953, at *3; cf. CrossFit, Inc. v. Parise, No. 13-CV-01085-CAB-JMA, 2014 WL 12508598, at *3 (S.D. Cal. 2014) (requiring more evidence of the famous and distinctive qualities of the "CROSSFIT" mark to determine if the mark is famous for a trademark dilution claim). There is also no dispute here that Defendants used the CROSSFIT® mark after the mark became famous, and Defendants' use was commercial and in commerce.

CrossFit asserts that Defendants' use of the KrossFit mark dilute the CROSSFIT® mark both by blurring and by tarnishing the famous mark. ([15.1] at 39). "Dilution by blurring . . . occurs when consumers see the plaintiff's mark

18

used on a plethora of different goods and services . . . raising the possibility that the mark will lose the ability to serve as a unique identifier of the plaintiff's product." Brain Pharma, LLC v. Scalini, 858 F. Supp. 2d 1349, 1359 (S.D. Fla. 2012) (citations omitted). CrossFit alleges that the KrossFit mark will impair the distinctiveness of the CROSSFIT® mark. Having carefully reviewed CrossFit's exhibits, the Court finds that Defendants' use of KrossFit in connection with various unrelated products and services raises the possibility of dilution of the CROSSFIT® mark.[7]

Dilution by tarnishment occurs when a trademark is "linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." Brain Pharma, 858 F. Supp. 2d at 1358 (internal citations and quotation marks omitted); GTFM, Inc. v. Solid Clothing, Inc., 215 F. Supp. 2d 273, 301 (S.D.N.Y. 2002) (explaining that tarnishment is likely when a lower quality product is marketed with a substantially similar mark to that of a higher quality product of the same type); Tommy Hilfiger

---

[7]    Although Defendants' offering of "Cross Fit Classes" tend to increase rather than diminish the distinctiveness of the mark, Defendants also use the term KrossFit with "My Baby Can Sing" talent competition, self defense training, kung-fu, etc.  ([15.14]).

Licensing, Inc. v. Nature Labs., LLC, 221 F. Supp. 2d 410, 422 (S.D.N.Y. 2002) (Tarnishment can occur where "[t]he reputation of the trademark is harmed and its value reduced 'because the public will associate the lack of quality or prestige in the defendant's goods with the plaintiff's unrelated goods,' or because the mark ceases to serve as a 'wholesome identifier of the owner's products.'"); Toys R Us, Inc. v. Feinberg, 26 F. Supp. 2d 639, 644 (S.D.N.Y. 1998), rev'd on other grounds, 201 F.3d 432 (2d Cir. 1999) (noting that tarnishment can result from a mark's association with an inferior product).

CrossFit asserts that Defendants have not been credentialed as CrossFit trainers, and their gym has not been properly insured to its standard, given that they train children as well as adults.  CrossFit also asserts that Quinnie has a extensive criminal record.  Even if these claims are true, CrossFit has not shown that the quality of Defendants' fitness training is inferior in any way, or the service provided will somehow tarnish the CROSSFIT® mark.  There is also nothing apparently unwholesome or unsavory with Defendants' fitness training. Tarnishment requires that Defendants' use of the CROSSFIT® mark has caused someone to associate some inferior product or service.  See ArcelorMittal USA, LLC v. Arillotta, No. 2:15-CV-00239, 2015 WL 7283176, at *4 (N.D. Ind. 2015)

(declining to enter default judgment because plaintiff failed to show any association of its mark to some inferior product or service).

  E. <u>Georgia State Law</u>

  CrossFit alleges violations of Georgia trademark law.  (Compl. [1]).  The federal Lanham Act analysis governs the analysis of CrossFit's state law trademark claims for trademark dilution under O.C.G.A. § 10-1-451(b) and for deceptive trade practices in violation of Georgia's Uniform Deceptive Trade Practices Act under O.C.G.A. §§ 10-1-370 to 10-1-375.  <u>See</u> <u>Valencia v. Universal City Studios LLC</u>, No. 1:14-CV-00528-RWS, 2014 WL 7240526, at *5 (N.D. Ga. 2014) (finding that plaintiff's state law claim under O.C.G.A. § 10-1-451(b) rise and fall with plaintiff's federal trademark claims); <u>Energy Four, Inc. v. Dornier Med. Sys., Inc.</u>, 765 F. Supp. 724, 731 (N.D. Ga. 1991) (finding that the Georgia Uniform Deceptive Trade Practices Act involves the same dispositive questions as the federal Lanham Act, and the court's analysis under the Lanham Act will dispose of the state law issues).  Because the Court finds that there is the likelihood of confusion and dilution, and the Court has already entered default judgment on CrossFit's federal trademark claims, the Court will enter default judgment on CrossFit's state law claims.

F.     Remedies

CrossFit seeks to recover the following relief: (1) Defendants' profits,
(2) treble damages, (3) attorneys' fees and costs, and (4) permanent injunction.
([15.1] at 43).

The Court may grant default judgment and award damages without a hearing
if "the amount claimed is a liquidated sum or one capable of mathematical
calculation." Adolph Coors Co. v. Movement Against Racism and the Klan,
777 F.2d 1538, 1543 (11th Cir. 1985); United Artists Corp. v. Freeman, 605 F.2d
854, 857 (5th Cir.1979). "While a party in default admits the well-pleaded
allegations of the complaint against it, a plaintiff cannot satisfy the certainty
amount by simply requesting a specific amount. He must also establish that the
amount is reasonable under the circumstances." Elektra Entm't Grp., Inc.
v. Jensen, No. 1:07-CV-0054-JOF, 2007 WL 2376301, at *2 (N.D. Ga. 2007)
(internal quotation omitted); see also Adolph Coors, 777 F.2d at 1544 ("Damages
may be awarded only if the record adequately reflects the basis for award."). The
Court is obligated to assure (i) there is a proper basis for the damage award it
enters, and (ii) that damages are not awarded solely as the result of an
unrepresented defendant's failure to respond. Anheuser Busch, Inc. v. Philpot,
317 F.3d 1264, 1265 (11th Cir. 2003).

Damages for trademark infringement under the Lanham Act may include (1) the infringing party's profits, (2) any damage sustained by the trademark holder and (3) the cost of the action.  15 U.S.C. § 1117(a); Aronowitz, 513 F.3d at 1241; Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1564 (11th Cir. 1986). "Lanham Act damages may be awarded even when they are not susceptible to precise calculations," and the district courts have "wide discretion in determining a just amount of recovery for trademark infringement." Aronowitz, 513 F.3d at 1241 (quoting Ramada, 804 F.2d at 1564-65).  Damages sustained by the trademark holder include "all elements of injury to the business of the trademark owner proximately resulting from the infringer's wrongful acts such as the costs of corrective advertising or injury to business reputation or goodwill." Id. at 1241 (internal citation and quotation marks omitted).

1. Defendant's Profits

"[T]he law in this Circuit is well settled that a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits under § 35 of the Lanham Act." Burger King Corp. v. Mason, 855 F.2d 779, 781 (11th Cir. 1988). A plaintiff shall be entitled to a defendant's profits if any of these three circumstances exist: "(1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future

conduct." <u>Optimum Techs., Inc. v. Home Depot U.S.A., Inc.</u>, 217 Fed. App'x. 899, 902 (11th Cir. 2007).

The Court agrees that an award of Defendants' profits is appropriate.  When CrossFit first became aware of the infringement of its mark, it sent several cease-and-desist letters to Defendants, but Defendants did not stop using their infringing mark.  ([1] ¶¶ 17-19).  Defendants instead moved the business to a different location while continuing to conduct business with the infringing mark. (<u>Id.</u> ¶ 24).  Defendants' actions were elusive.  Defendants' default, in view of CrossFit's allegation of willful infringement, also supports an inference of willfulness.[8]

"In assessing profits the plaintiff shall be required to prove defendant's sales only."  15 U.S.C. § 1117(a).  CrossFit submits that Defendants' total sales could be determined based on information from Defendants' Internet presence.  CrossFit

---

[8]     <u>Accord</u> <u>Arista Records, Inc. v. Beker Enterprises, Inc.</u>, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) ("this Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default"); <u>Microsoft Corp. v. Wen</u>, No. C 99-04561 MEJ, 2001 WL 1456654 at *5 (N.D. Cal. 2001) (default alone established willfulness based on allegations of willfulness in plaintiff's complaint); <u>Sony Music Entertainment v. Cassette Prod.</u>, No. 92–4494(JCL), 1996 WL 673158 at *5 (D.N.J. 1996) (defendant admitted plaintiff's claim that infringements were willful by virtue of his default); <u>Fallaci v. The New Gazette Literary Corp.</u>, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (inference of willfulness drawn by "defendant's failure to appear and defend this action," particularly in light of plaintiff's allegation of willfulness).

asserts without actual support that Defendants has a reasonable estimate of at least 103 patrons each month, based on Defendants' Facebook page.  ([15.1]; [15.15]). Defendants' Facebook page, however, only shows the total number of people who checked in to Defendants' page.  The only reasonable inference from Defendants' Facebook page is that at least 103 people visited Defendants' gym.  See CrossFit, Inc. v. 2XR Fit Sys., LLC, 2014 WL 972158, at *11 (noting the total number of Facebook visitors).

CrossFit asserts that Defendants typically charged their customers $135 per month according to their Groupon advertisement, and one person bought a membership under the discounted rate of $79 for a three-month membership. ([13.18]).  The Court agrees and will use $135 as the rate for a one-month membership.  Accordingly, the cost for one-month membership ($135) multiplied by 103 people equals $13,905.  The Court estimates that Defendants' total sales amount to at least $13,905 plus the one Groupon sale of $79, for a total of $13,984 in profits as compensatory damages.  See CrossFit, Inc. v. 2XR Fit Sys., LLC, 2014 WL 972158, at *11 (calculating profit based on the Groupon membership sales plus other monthly memberships multiplied by the total number of Facebook visitors).

25

2.    Treble Damages

CrossFit requests that the estimated profits be trebled under 15 U.S.C.

§ 1117(a).  ([15.1] at 48).  Section 1117(a) provides:

> In assessing damages the court may enter judgment, according to the
> circumstances of the case, for any sum above the amount found as
> actual damages, not exceeding three times such amount.  If the court
> shall find that the amount of the recovery based on profits is either
> inadequate or excessive the court may in its discretion enter judgment
> for such sum as the court shall find to be just, according to the
> circumstances of the case.  Such sum in either of the above
> circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a).  The Eleventh Circuit has noted that the damages provision in

the Lanham Act "vests considerable discretion in the district court."  Burger King,

710 F.2d at 1495.  An enhanced damages award "'is discretionary, but it may not

be punitive, and must be based on a showing of actual harm.'"  Home Depot, 217

Fed. App'x. at 903 (quoting Babbit Electronics, Inc. v. Dynascan Corp., 38 F.3d

1161, 1183 (11th Cir. 1994)).

CrossFit asserts that justice requires treble damages because (1) Defendants

have continued to willfully infringe on the CROSSFIT® mark, (2) the estimated

profit is conservative, and (3) to deter Defendants from future infringement.

Having carefully considered the circumstances before the Court, the Court declines

to award treble damages.  CrossFit has not shown actual harm from the

infringement.  Defendants have a small operation, they have largely stopped using

26

the infringing store name,[9] and the degree of harm is minimal.  The Court finds

that an award of treble damages would be punitive and beyond the amount

necessary to compensate CrossFit.

### 3.    Costs

CrossFit seeks to recover costs incurred in this action under Rule 54 of the

Federal Rules of Civil Procedure and under the Lanham Act.  The Lanham Act

allows a trademark registrant who establishes a defendant's trademark

infringement to recover "costs of the action."  15 U.S.C. § 1117(a).  CrossFit, as a

prevailing party, is entitled to recover its reasonable costs under Rule 54(d).  Title

28 U.S.C. § 1920 sets forth what may be taxed as costs.

CrossFit asserts that it has incurred $1,230.62 in litigation costs, comprised

of its filing fees and the costs in serving the Compliant on Defendants.  CrossFit

claims the following costs:

- The filing fee ($400);

---

[9]     CrossFit states that Defendants took down their first Facebook page for
KrossFit 24 in May 2015.  The second, different Facebook page for Kross Fitness
24 shows that Defendants' fitness center was already permanently closed.  Any
continuing infringement could be adequately addressed via injunction as CrossFit
sought.  And, as discussed above, the Court doesn't find Defendants' use of
"Supreme K Fitness" to infringe on the CROSSFIT® mark.

- Pro hac vice admission fees for counsel Yuo-Fong Amato ($150);
  Hazel Mae Pangan ($150), and Susan Meyer ($150);[10]

- Service of Complaint on Jett and Total Body Recall ($255);

- Service of Complaint on Quinnie ($100); and

- Pacer Fees ($25.62).

Courts are split on whether a court may appropriately include pro hac vice as costs.[11]  Other courts in our Circuit have looked at the issue and "reasoned that pro hac vice fees are not recoverable because they are an expense of counsel, not

---

[10]     The pro hac vice admission fees were listed as filing fees in CrossFit's supporting document.  ([15.22]).

[11]     Accord Eagle Ins. Co. v. Johnson, 982 F. Supp. 1456, 1460 (M.D. Ala. 1997) (holding that pro hac vice fees are not taxable as costs), aff'd sub nom. Eagle Ins. v. Johnson, 162 F.3d 98 (11th Cir. 1998); LaBombard v. Winterbottom, No. 8:14-CV-00071 (MAD/CFH), 2015 WL 9450838, at *2 (N.D.N.Y. 2015) (same); Smith v. Joy Techs., Inc., 2015 WL 428115, at *5 (E.D. Ky. 2015) (finding pro hac vice fees are not recoverable but original admission fees are (citing Kalitta Air L.L.C. v. Central Texas Airborne Sys., Inc., 741 F.3d 955, 958 (9th Cir. 2013)); but see Craftsmen Limousine, Inc. v. Ford Motor Co., 579 F.3d 894, 898 (8th Cir. 2009); United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc., 436 F.3d 726, 730 (7th Cir. 2006).
    The Seventh and Eighth Circuits allowed for the taxing of pro hac vice admission fees prior to the Supreme Court's decision in Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 132 S. Ct. 1997, 1999 (2012).  In Taniguchi, the Supreme Court clarified that the discretion granted by Rule 54(d) "is solely a power to decline to tax, as costs, the items enumerated in § 1920," and "is not a power to evade the specific categories of costs set forth by Congress . . . ."  Id.

the client."[12] <u>Buccellati Holding Italia SPA v. Laura Buccellati LLC</u>, No. 13-

21297-CIV, 2015 WL 11202358, at *7 (S.D. Fla. 2015) (citing <u>Hernandez</u>

<u>v. Motorola Mobility, Inc.</u>, No. 12-60930-CIV, 2013 WL 4773263, at *5 (S.D. Fla.

2013); <u>Covington v. Arizona Beverage Co., LLC</u>, No. 08-21894-CIV, 2011 WL

810592 at *3-4 (S.D. Fla. 2011)); <u>Cathey v. Sweeney</u>, No. CIV A CV205-202,

2007 WL 1385657, at *1 (S.D. Ga. 2007); <u>Eagle</u>, 982 F. Supp. at 1460 (M.D. Ala.

1997).  PACER fees are also non-recoverable.  <u>Glob. Patent Holdings, LLC</u>

<u>v. Panthers BRHC LLC</u>, No. 08-80013-CIV, 2009 WL 1809983, at *2 (S.D. Fla.

2009).  Having carefully considered the facts in the case, the Court will award

costs without the pro hac vice fees and PACER fees, in the amount of $755.

    4.   <u>Attorneys' Fees</u>

The Lanham Act provides the Court to award attorneys' fees in "exceptional

cases."  15 U.S.C. § 1117(a).[13]  The Eleventh Circuit previously held that an

"exception case" is "one that can be characterized as malicious, fraudulent,

---

[12]    According to the time records submitted by CrossFit's counsel, the law firm spent 2.1 hours to prepare the pro hac vice applications, of which none of it was charged to the client.

[13]    CrossFit also asserts that it is entitled to attorneys' fees under Georgia Uniform Deceptive Trade Practices Act.  O.C.G.A. § 10-1-373 ("The court, in its discretion, may award attorney's fees to the prevailing party if: . . . [t]he party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive.").

deliberate and willful, or one in which evidence of fraud or bad faith exists." Tire

Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332 (2001) (internal

citations and quotation marks omitted).  In 2014, the Supreme Court, in

considering an identically worded fee provision in the Patent Act, rejected a

standard that required evidence of misconduct and subjective bad faith.  Octane

Fitness, LLC v. ICON Health & Fitness, Inc., — U.S. —, 134 S. Ct. 1749, 1756,

(2014).  The Supreme Court found the previous standard as defined by the Federal

Circuit was "unduly rigid" and not required by the ordinary meaning of the word

"exceptional."  Id.  An "exceptional" case, according to the Supreme Court, is

"simply one that stands out from others with respect to the substantive strength of a

party's litigating position (considering both the governing law and the facts of the

case) or the unreasonable manner in which the case was litigated."  Id.

Although the Eleventh Circuit has yet to consider the effect of Octane

Fitness in our Circuit, district courts in this Circuit and circuits have held that a

showing of subjective bad faith or fraud is no longer required.  See CarMax Auto

Superstores, Inc. v. StarMax Fin., Inc., 192 F. Supp. 3d 1279 (M.D. Fla. 2016)

(collecting cases); but see FN Herstal, S.A. v. Clyde Armory, Inc., No. 3:12-CV-

102 (CAR), 2016 WL 5422073, at *3 (M.D. Ga. 2016) (applying Eleventh

Circuit's standard for exceptional cases because neither the Supreme Court nor the Eleventh Circuit has addressed whether Octane Fitness applies to the Lanham Act).

The Court finds that both Octane Fitness factors are met here. First, the substantive strength of CrossFit's litigating position stands out from others. Defendants' KrossFit mark has a similar appearance as the CROSSFIT® mark and sounds identical to the CROSSFITT® mark. Defendants intended to create customer confusion through use of the KrossFit mark, and when confronted by CrossFit, Defendants failed to completely cease their infringing actions. According, the Court finds that the action to be an exceptional case under the Lanham Act.

Even if Octane Fitness does not apply in our Circuit, CrossFit would be entitled to reasonable attorneys' fee because the Court previously found Defendants' actions to be willful. CrossFit sent several cease-and-desist letters, but Defendants failed to cooperate. Defendants further attempted to conceal Quinnie's identity, which forced CrossFit to incur unnecessary investigative expense. Defendants, instead of stopping the infringing activities, reopened a new gym at a different location and continued to identify themselves as "KrossFit 24." Given the willfulness of Defendants' conduct, it is appropriate to award attorneys' fees to CrossFit.

31

a)      Reasonable Fees

In our Circuit, "the starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (considering the recovery of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988) (internal quotation marks and citations omitted).  The court may adjust the lodestar amount based upon the results obtained.  See Norman v. Housing Auth., 836 F.2d 1292, 1302 (11th Cir. 1988).

"A request for attorney's fees should not result in a second major litigation." Norman, 836 F.2d at 1303 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).  It is "perfectly proper to award attorney's fees based solely on affidavits in the record."  Id.  "The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses . . . ."  Id. (citations omitted).  Evidentiary hearings are only necessary "where there [a]re disputes of fact, and where the written record [i]s not sufficiently clear to allow the trial court to resolve the disputes of fact."  Id.

CrossFit submitted detailed time records and an affidavit from its lead counsel Yuo-Fong Amato.  (Aff. Yuo-Fong Amato [15.4]; [16.1])).  Several people worked on this case: two partners billed at $350 per hour; two senior counsel billed at $325 per hour; one associate billed at $295; and two paralegals billed at $150 per hour.  The Court finds that the rates charged by the attorneys and paralegals fall within the ranges of the prevailing market rates for persons with similar experience, skill, and reputation, and concludes the rates billed to be reasonable.

 "The next step in the computation of the lodestar is the ascertainment of reasonable hours."  Norman, 836 F.3d at 1301.  The submitted time records show that Gordon & Rees billed 221.1 hours total,[14] from pre-filing investigation through the filing of the motion for default judgment.  Having carefully reviewed the hours, the Court notes that a reduction in hours is warranted.  A senior counsel, Cecily McLeod, billed time for "Review of clerk's entry and orders accepting pro hac admissions" (0.2 hours), but other entries related to pro hac vice applications were not billed.  Cecily McLeod and an associate, Patrick Mulkern, also billed time for researching and proving statutory damages (11.2 hours), but CrossFit did not claim statutory damages.  Billing an adversary for unproductive time spent

---

[14]     The actual hours billed to CrossFit were less because many of the entries were not charged to CrossFit.

researching or preparing issues that were not asserted is not warranted.[15]   The time records also include entries for "Draft weekly status update" and other clerical-type services.  While providing weekly reports may be good business manner and evidence of diligence, there are weeks where nothing happened in this case except for drafting weekly status updates.  Reimbursement of these hours is not warranted.  The Court will not consider the above-noted entries in ascertaining the reasonable hours.

After removing the hours not charged to CrossFit and the entries noted above, the remaining number of hours reduces to 180 hours, which can next be categorized into three phases.  During the pre-filing phase, a partner, Yuo-Fong Amato, and a senior counsel, Cecily McLeod, billed 15 hours for $5,500.  During the second phases, from post-filing of the Complaint to the filing of entry for default judgment, the attorneys and paralegals billed 10.2 hours for $2,815.  During the third phase, mainly for preparing the motion for default judgment, the firm billed 154.8 hours for $53,301.  Yuo-Fong Amato billed 131.4 hours for $45,990; Cecily McLeod billed 13.6 hours for $4,420; Patrick Mulkern billed 9.8 hours for $2,891.

---

[15]   The partner Yuo-Fong Amato did not charge for related entries to "Analyze law as to whether we can request statutory damages for defendants' actions" (3.1 hours).

The Court has concerns on the reasonableness of the amount of hours billed in this case.  In another CrossFit trademark case handled by Gordon & Ress and Yuo-Fong Amato that also proceeded to default judgment, the total amount billed was $17,608.50.  <u>CrossFit, Inc. v. 2XR Fit Sys., LLC</u>, No. CIV. 2:13-1108 KM, 2014 WL 972158, at *13 (D.N.J. 2014).  Here, the firm billed $53,301 during the third phase (154.8 hours) alone, and largely for preparing the unopposed motion for default judgment.  The Court thus reduces the amount for preparing the motion by 50%, or $53,301 reduced by half equals the amount of $26,650.50.  The total amount thus equals $34,703.  The Court will award reasonable attorney's fees in the amount of $34,965.50.

G.    <u>Permanent Injunction</u>

Under the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent a defendant's continuing trademark infringement. 15 U.S.C. § 1116(a).  "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  <u>Burger King Corp. v. Agad</u>, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1180 (9th Cir. 1988)).

To obtain an injunction, a party must demonstrate "(1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008) (citing eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006)).

CrossFit asserts, and the Court agrees, that there is a substantial threat of irreparable harm to CrossFit's loss of control of the CROSSFIT® mark. "[T]he lack of control over one's mark 'creates the potential for damage to . . . reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.'" Ferrellgas Partners, L.P. v. Barrow, 143 F. App'x 180, 190 (11th Cir. 2005) (quoting Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 196 (3d Cir. 1990)). The "most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods," even if "the infringer's products are of high quality." Id. Because the Court found that there is a sufficient showing of likelihood of confusion and that Defendants' use of KrossFit in connection to

36

unrelated services dilutes the CROSSFIT® mark, the Court concludes that irreparable harm is established.

It is also generally recognized in trademark infringement cases that "there is not adequate remedy at law to redress infringement."  Tally–Ho, Inc. v. Coast Cmty. Coll. Dist., 889 F.2d 1018, 1029 (11th Cir. 1989) (citation omitted). Defendants have no right to use the CROSSFIT® mark, and "therefore could suffer no legitimate hardship by being forced to stop that which [they have] no right to do."  Tiramisu Int'l LLC v. Clever Imports LLC, 741 F. Supp. 2d 1279, 1288 (S.D. Fla. 2010).  On the other hand, CrossFit will continue to suffer damages, such as the dilution of its mark, if Defendants are not enjoined as requested.  Finally, the public interest would not be disserved because "the public deserves not to be led astray by the use of inevitably confusing marks . . . ."  Angel Flight, 522 F.3d 1200, 1209.

"In ordinary trademark infringement actions," as here, "complete injunctions against the infringing party are the order of the day."  Angel Flight, 522 F.3d at 1209.  Defendants are hereby permanently enjoined from use of the CROSSFIT® mark as set out below.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff CrossFit, Inc.'s Motion for

Default Judgment [15] is **GRANTED**.  The Clerk is **DIRECTED** to enter

judgment in favor of Plaintiff against Defendants Kateric Peter Quinnie, Donald

Jett, and Total Body Recall, LLC in the following amounts: (1) profit in the

amount of $13,984; (2) costs in the amount of $755; and (3) attorneys' fees in the

amount of $34,965.50, for a total award of $49,704.50.

**IT IS FURTHER ORDERED** that Defendants, individually and

collectively, for themselves and their principals, partners, officers, agents, servants,

employees, representatives, successors, and assigns are **PERMANENTLY**

**ENJOINED** from infringing upon the CROSSFIT® trademarks and from using

any confusingly similar terms, in any manner, including but not limited to the

following activities:

- Offering, providing, or purporting to offer or provide fitness classes or

  fitness training using the CROSSFIT® trademarks and/or any

  confusingly similar terms, including but not limited to "KrossFit,"

  "Kross Fit," "KrossFitness," and "Kross Fitness."

- Using the CROSSFIT® trademarks and/or any confusingly similar terms, including but not limited to "KrossFit," "Kross Fit," "KrossFitness," and "Kross Fitness," on physical materials, including but not limited to signage, facility exteriors and interiors, and any and all printed materials.  This includes, without limitation, all signage located at or around 1166 Franklin Road SE, Marietta, Georgia; at or around 3055 N. Main Street, NW, Kennesaw, Georgia; at or around any other location where Defendants offer fitness training services.

- Using the CROSSFIT® trademarks and/or any confusingly similar terms, including but not limited to "KrossFit," "Kross Fit," "KrossFitness," and "Kross Fitness," on their websites (including but not limited to text in meta-tags), blogs, social media profiles, business directories and listings, advertisements, promotional materials, and third-party sites where company information is submitted by Defendants regarding their personal training services.

- Registering, using, or selling any trademark, trade name, or domain names containing the CROSSFIT® trademarks and/or any confusingly similar terms, including but not limited to "KrossFit," "Kross Fit," "KrossFitness," and "Kross Fitness," and from

encouraging or assisting any third party to do the same, in connection with any goods or services related or similar to those of CrossFit.

**SO ORDERED** this 8th day of February, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE